FILED
2011 NOV -7 P 4: 15
U.S. DISTRICT COURT
EASTERN DIST. TENN.
_____DEPT. CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TENNESEE CLEAN WATER
NETWORK, STATEWIDE
ORGANIZING FOR COMMUNITY
EMPOWERMENT, AND SIERRA
CLUB

    Plaintiffs,

v.                           CIVIL ACTION NO. 3:11-cv-527

NATIONAL COAL LLC,

    Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES

### INTRODUCTION

1. This is an action for declaratory judgment and mandatory injunctive relief and for civil penalties against Defendant National Coal, LLC ("National Coal"), for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "the CWA").

2. As detailed below, Plaintiffs allege that National Coal discharged and continues to discharge several pollutants – including iron, manganese, total suspended solids, and low or high pH effluent – into waters of the United States in persistent violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, and of the conditions and limitations of a Tennessee/National Pollution Discharge Elimination System ("TN/NPDES") Permit issued to Defendant by the State of Tennessee pursuant to Section 402 of the Clean Water Act.

1

## JURISDICTION AND VENUE

3. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365 (Clean Water Act citizens' suit provision).

4. By letter sent certified mail and postmarked August 18, 20111, Plaintiffs gave notice of the violations and their intent to file suit to Defendant, the United States Environmental Protection Agency ("EPA"), and the Tennessee Department of Environment and Conservation ("TDEC"), as required by § 505(b)(1)(a), 33 U.S.C. § 1365(b)(1)(a).

5. More than sixty days have passed since the notice was served and neither EPA nor TDEC has commenced or has diligently prosecuted a civil or criminal action to require compliance. Moreover, neither EPA nor TDEC have commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or comparable state law to redress the violations prior to the issuance of the August 18, 2011 notice letter.

6. Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act violations are located in this District.

## PARTIES

7. National Coal, LLC is a Tennessee Limited Liability Company with a principal business office in West Virginia and does business in Campbell County, Tennessee.

8. National Coal is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

9. At all relevant times, National Coal owned and operated Mine 14 in Campbell County, Tennessee, which is regulated by Surface Mining Permit TN-019 and which discharges pollutants from various outfalls that are subject to the effluent limitations of TN/NPDES Permit

TN0079502.

10. Plaintiff Tennessee Clean Water Network ("TCWN") is a nonprofit organization incorporated in Tennessee. Its principal place of business is in Knoxville, Tennessee. TCWN empowers citizens to exercise their right to clean water and healthy communities by fostering civic engagement, building partnerships and advancing and, when necessary, enforcing clean water policy for a sustainable future. As its name suggests, TCWN has focused on water quality issues and is a leading source of information about water pollution in Tennessee.

11. Statewide Organizing for Community eMpowerment ("SOCM") is a nonprofit organization incorporated in Tennessee. Its mission is to empower Tennesseans to protect, defend, and improve the quality of life in their communities across the state. SOCM works for social, economic, and environmental justice. SOCM grew out of grass-roots organizing efforts in small coalfield communities and still places substantial efforts into addressing coal-mine pollution. It works for the conservation and wise management of Tennessee's natural resources.

12. Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members and supporters nationwide and nearly 6500 members who reside in Tennessee and belong to its Tennessee Chapter. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in Tennessee.

13. Plaintiffs' members suffer injuries to their aesthetic, recreational, environmental, and/or economic interests as a result of National Coal's unlawful discharges of pollutants and

informational injuries related to National Coal's failure to comply with the monitoring and reporting requirements of its permit. Plaintiffs' members fish, swim, observe wildlife, or otherwise use the waters affected by National Coal's discharges and are harmed by the high levels of pollutants that National Coal is discharging in violation of its permits. Plaintiffs' members refrain from swimming, wading, fishing, boating, and/or engaging in other activities in and around the streams affected by National Coal's discharges to avoid exposure to pollutants. Plaintiffs' members are also very concerned about the impacts of pollution from National Coal's discharges on their friends and neighbors and on local wildlife. Plaintiffs and their members also wish to obtain information related to National Coal's discharges and violations of its permits in order to inform and educate themselves and the public about the nature and impact of pollutants being discharged from the site. If National Coal's unlawful discharges and failure to comply with the monitoring and reporting requirements of its permit ceased, the harm to the interests of Plaintiffs' members could be redressed. Injunctions and/or civil penalties would redress Plaintiffs' members' injuries by preventing and/or deterring future violations of the limits and conditions in National Coal's permit.

14. At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5).

## STATUTORY AND REGULATORY FRAMEWORK

15. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a National Pollution Discharge Elimination System ("NPDES") Permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

16. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing

authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

17. Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological, and other constituents of wastewater discharges. Effluent limitations are among the conditions and limitations prescribed in NPDES permits issued under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

18. Section 303(a) of the CWA, 33 U.S.C. § 1313(a), requires that states adopt ambient water quality standards and establish water quality criteria for particular water bodies that will protect the designated uses of the water. When technology-based effluent limitations are insufficient to keep receiving waters within those levels, the permit must include stricter water quality based effluent limits ("WQBELs") that reflect water quality standards and criteria. 33 U.S.C. § 1311(b)(1)(C).

19. At all times relevant to this complaint, the State of Tennessee has been authorized by EPA to administer a NPDES program for regulating the discharges of pollutants into the waters of Tennessee. Permits issued under this program are known as "TN/NPDES" permits.

20. Holders of TN/NPDES Permits are required to monitor their discharges and report their average monthly discharges and maximum daily discharges on a quarterly basis. Those reports are called "Discharge Monitoring Reports," or "DMRs."

21. Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in

5

violation of . . . an effluent standard or limitation under this chapter."

22. Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a), of the CWA, a WQBEL, and "a permit or condition thereof issued" under Section 402, 33 U.S.C. § 1342, of the CWA.

23. Section 402(a)(2) provides the Administrator shall prescribe conditions for permits to assure compliance with requirements of the Act, "including conditions on data and information collection, reporting, and such other requirements as he deems appropriate." 33 U.S.C. § 1342(a)(2).

24. The monitoring and reporting requirements of a permit, like the discharge limitations, are therefore fully enforceable effluent limitations.

25. In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant or defendants to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1365(d). See 33 U.S.C. § 1365(a).

26. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

27. Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, the court may assess a civil penalty of $37,500 per day for each violation that occurred after January 12, 2009.

See 40 C.F.R. § 19.4.

28. Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

29. TDEC is the agency in the State of Tennessee that administers that State's CWA program, and issues TN/NPDES Permits.

## FACTS

30. At all relevant times, National Coal has held TN/NPDES Permit Number TN0079502 to regulate water pollution from its Mine 14.

31. At all relevant times, National Coal has held SCMRA Permit TN-019 for its Mine-14.

32. TN/NPDES Permit Number TN0079502 places limits on the concentrations of pollutants that National Coal can discharge into North Fork of Montgomery Fork and/or its tributaries from Outfalls 002 and 003. Those waters are waters of the United States. The Tennessee Department of the Environment and Conservation ("TDEC") has classified these streams as supportive of uses for fish and aquatic life, livestock watering and wildlife, recreation, and irrigation.

33. The DMRs that National Coal submitted to TDEC reveal that National Coal has discharged pollutants in excess of the final effluent limitations of its permit from Outfalls 002 and 003 on many occasions.

34. As outlined in Table 1 of the original Notice Letter attached to this complaint, National Coal has violated the final effluent limitations on Outfalls 002 and 003 of TN/NPDES Permit TN0079502 at least 58 times for a total of 1057 days of violation.

35. Since the date of Plaintiffs' Notice Letter Plaintiffs have learned of the following additional discharge violations, for which National Coal is liable:

| Outlet | Date of Violation | Parameter | Effluent Limit | Discharge Level | Days of Violation |
|---|---|---|---|---|---|
| 002 | July 16, 2011 | TSS | 70 mg/L | 79 mg/L | 1 |
| 002 | July 2011 | TSS | 35 mg/L | 79 mg/L | 31 |
| 003 | July 16, 2011 | pH | 6.0 to 9.0 | 10 | 1 |

36. On the basis of National Coal's pattern of exceedances of its effluent limitations in TN/NDPES Permit Number TN0079502 and the absence of any evidence of any meaningful efforts by National Coal to eradicate the cause of the violations, Plaintiffs allege that National Coal is in continuing and/or intermittent violation of the Clean Water Act.

37. Additionally, as outlined in the original Notice Letter and below, National Coal has accrued many violations of monitoring and reporting requirements related to its discharges, including the failure to take and report samples representative of the monitored activity, the failure to monitor and report stormwater discharges, and the failure to submit quarterly non-compliance reports.

38. Plaintiffs sent a notice of intent letter (hereinafter, "NOI"), postmarked on August 18, 2011, to National Coal notifying it that its discharges of pollutants in violation of its permit constitute violations of the Clean Water Act and SMCRA. That letter is attached as Exhibit A.

39. The NOI also notified Defendant of Plaintiffs' intent to sue Defendant for those violations at the end of the 60-day period required by statute.

40. The NOI was sent by certified mail, return receipt requested, to the following persons: Derrick O'Neal, Attorney-in-Fact for National Coal LLC; CT Corporation Systems, National Coal's registered agent; Lisa P. Jackson, EPA Administrator, Gwendolyn Keyes Fleming, EPA Region 4 Regional Administrator; Robert J. Martineau, Commissioner of TDEC;

Paul E. Davis, Director of the TDEC's Division of Water Pollution.

## FIRST CLAIM FOR RELIEF
(Clean Water Discharge Violations of TN/NPDES Permit Number TN0079502)

41. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 40 supra.

42. National Coal's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit. 33 U.S.C. § 1311.

43. The pollution limits in TN/NPDES Permit Number TN0079502 are "effluent standards or limitations" for purposes of section 505(a)(1) of the Clean Water Act because they are a condition of a permit issued under section 402 of the Act. 33 U.S.C. § 1365(f).

44. Each and every discharge in excess of the effluent limitations in TN/NPDES Permit Number TN0079502 is actionable under section 505(a)(1) of the Clean Water Act. 33 U.S.C. § 1365(a)(1).

45. A violation of an average monthly effluent limitation in a permit is considered to be a violation on each and every day of that month.

46. On information and belief, Plaintiffs allege that National Coal has violated the effluent limitations in TN/NPDES Permit TN0079502 a total of 58 times, amounting to 1057 cumulative days of violations. These violations are outlined in Table 1 of the Notice Letter attached as Exhibit A.

47. Since the date of Plaintiffs' Notice Letter Plaintiffs have become aware of the following additional discharge violations for with National Coal is liable.

| Outlet | Date of Violation | Parameter | Effluent Limit | Discharge Level | Days of Violation |
|---|---|---|---|---|---|

| 002 | July 16, 2011 | TSS | 70 mg/L | 79 mg/L | 1 |
| 002 | July 2011 | TSS | 35 mg/L | 79 mg/L | 31 |
| 003 | July 16, 2011 | pH | 6.0 to 9.0 | 10 | 1 |

48. Unless enjoined, National Coal will remain in continuing violation of the Clean Water Act.

49. On information and belief, Plaintiffs allege that National Coal is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the effluent limitations in TN/NPDES Permit Number TN0079502 because National Coal has taken no meaningful action to eradicate the underlying cause of the violations and, even if National Coal has taken some action in regard to these violations, these actions are not of such a nature as to ensure that in the absence of the threat of litigation, National Coal will not simply return to its old ways.

50. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), National Coal is liable for civil penalties of up to $37,500 per day of violation for its violations of the effluent limitations in TN/NPDES Permit Number TN0079502.

### SECOND CLAIM FOR RELIEF
(Clean Water Reporting Violations of TN/NPDES Permit Number TN0079502)

51. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 50 supra.

52. 40 C.F.R. § 122.41(j)-(l); Tenn. Comp. R. & Regs 1200-04-05-.07(h); and Permit TN0079502 each require National Coal to take samples and measurements and report results "representative of the monitored activity" in quarterly discharge monitoring reports.

53. Additionally the CWA requires a permittee to accurately submit and maintain its DMRs.

54. Pursuant to TN/NPDES Permit TN0079502 samples must be taken at least twice per month. If additional samples are collected they must be reported as well.

55. Permit TN0079502 explains that monitoring results below the detection limit of monitoring equipment should be reported as "BDL" or "below the detection limit."

56. The DMRs submitted by National Coal for several monitoring and reporting periods show the results of monitoring as "0.0." It is impossible to determine whether this "0.0" indicates a sample below detection limit or a period when no sample was taken.

57. Each instance of a "0.0" during a reporting period is not a representative result and therefore is a violation of the monitoring and reporting requirements of Permit TN0079502.

58. Additionally, there are several months during which no representative sampling was performed and/or reported for manganese, iron, total suspended solids and suspended solids.

59. Upon information and belief National Coal has accrued at least 264 monitoring and reporting violations of the type described above. These are indicated in Table 2 of the Notice Letter attached as Exhibit A.

60. Since the date of Plaintiffs' Notice Letter Plaintiffs have become aware of the following additional discharge violations for with National Coal is liable:

| Outlet | Date of Violation | Parameter | Flow | Reporting Error |
|---|---|---|---|---|
| 002 | July 16, 2011 | Mn | 10.0 gpm | Reported "0" |
| 002 | September 17, 2011 | Mn | 2.0 gpm | Reported "0" |
| 002 | July | Mn | 0 – 10 gpm | No representative monitoring in July |
| 002 | September | Mn | 2.0 gpm | No representative Monitoring in September |
| 003 | July 2, 2011 | Mn | 5.0 gpm | Reported "0" |

Case 3:11-cv-00527-TAV-HBG   Document 1   Filed 11/07/11   Page 11 of 16   PageID #: 11

| | | | | |
|---|---|---|---|---|
| 003 | July 16, 2011 | Mn | 10.0 gpm | Reported "0" |
| 003 | July 2011 | Mn | 5.0 to 10.0 gpm | No representative monitoring in July |

61. Monitoring and reporting violations constitute ongoing violations for each day and for every outfall listed in the applicable CWA permit, which accrue civil penalties per day and per limit until the violations cease.

### THIRD CLAIM FOR RELIEF
(Clean Act Water Stormwater Monitoring /Reporting Violations of TN/NPDES Permit Number TN0079502)

62. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 61 supra.

63. TN/NPDES Permit TN0079502 and 40 C.F.R. § 122.44(i) contain annual reporting and monitoring requirements for stormwater discharges.

64. Permit TN0079502 specifically requires that samples of pH, Oil, Grease and Total Suspended Solids from stormwater must be reported on DMRs.

65. National Coal has not reported stormwater monitoring on DMRs in any year since at least 2006 for a total of 12 violations

66. Failure to submit a DMR constitutes an ongoing violation for each day, and for each parameter listed in the applicable CWA permit, and penalties accrue per day and per limit until the violations cease.

67. Stormwater monitoring and reporting violations are listed in Table 3 Notice Letter attached as Exhibit A.

### FOURTH CLAIM FOR RELIEF
(Clean Act Water Noncompliance Reporting of TN/NPDES Permit Number TN0079502 Violations)

12

68. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 67 supra.

69. Permit TN0079502 requires quarterly reporting of non-compliance, including "all information concerning steps taken, or planned, to monitor, reduce, eliminate, and prevent recurrence of the violation and, if not corrected, the anticipated time the violation is expected to continue."

70. Upon information and belief, although National Coal has had repeated discharge violations it has never submitted a quarterly non-compliance report.

71. Each failure to submit a non-compliance report constitutes an ongoing violation and penalties may accrue each day and for each parameter until the violations cease.

72. Upon information and belief, National Coal has accrued at least 13 violations for failure to submit noncompliance reports. These violations are listed in Table 4 of the Notice Letter Attached as Exhibit A.

73. Since sending the notice letter Plaintiffs have learned that National Coal failed to submit a non-compliance report for violations accrued in the 3rd quarter of 2011.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this court enter an Order:

(1). Declaring that National Coal has violated and is in continuing violation of the Clean Water Act;

(2). Enjoining National Coal from operating its facilities in such a manner as will result in further violations of the effluent limitations in TN/NPDES Permit Number TN0079502;

(3). Ordering National Coal to immediately comply with all effluent limitations, monitoring and reporting requirements, and other terms and conditions of TN/NPDES Permit

13

Number TN0079502;

(4). Ordering National Coal to pay appropriate civil penalties up to $37,500 per day for each CWA violation;

(5). Ordering National Coal to conduct monitoring and sampling to determine the environmental effects of their violations, to remedy and repair environmental contamination and/or degradation caused by their violations, and restore the environment to its prior uncontaminated condition;

(6). Awarding Plaintiffs' attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

(8). Granting other such relief as the Court deems just and proper.

Respectfully submitted,

Gena Lewis
Law Office of Gena Lewis
P.O. Box 6004
Maryville, TN 37802
Office Phone: (865) 978-6604
Cell Phone: (865) 300-1495
Fax: (865) 978-6605

Michael Bernard
Ogle, Elrod & Baril
706 Walnut St., Ste. 700
Knoxville, TN 37902\
Office Phone: (865) 546-1111

*Counsel for:*

Tennessee Clean Water Network
P.O. Box 1521
Knoxville, TN 37901
865-522-7007 x 102

Sierra Club

85 Second Street, 2d Floor
San Francisco, CA 94105-3441
415- 977-5680

Statewide Organizing for Community
    eMpowerment
2507 Mineral Springs Avenue Suite D
Knoxville, TN 37917
865-249-7488

## CERTIFICATE OF SERVICE

I, Michael Bernard, attorney for Plaintiffs, do hereby certify that service of the within and foregoing Complaint was made upon United States Environmental Protection Agency and the Attorney General by mail delivery to:

Lisa P. Jackson
Administrator
USEPA
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Mail Code: 1101A
Washington, DC 20460

Eric H. Holder
U.S. Attorney General
950 Pennsylvania Ave. N.W.
Washington, DC 20530-0001

by hand delivery or by placing the same with proper postage affixed in the U.S. Mail on this the __7__ day of November, 2011.

_____
Michael Bernard, Attorney for Plaintiffs